```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE EASTERN DISTRICT OF VIRGINIA
 2                          Norfolk Division

 3

 4   - - - - - - - - - - - - - - - - - -
                                        )
 5   UNITED STATES OF AMERICA,          )
                                        )
 6   v.                                 )   CRIMINAL ACTION NO.
                                        )   2:21cr115
 7   ANTONIO ROMYA BEALE,               )
                                        )
 8          Defendant.                  )
                                        )
 9   - - - - - - - - - - - - - - - - - -

10

11
                       TRANSCRIPT OF PROCEEDINGS
12                          (Sentencing)

13                       Norfolk, Virginia

14                        March 31, 2022

15

16   BEFORE:  THE HONORABLE RODERICK C. YOUNG
                 United States District Judge
17

18

19   APPEARANCES:

20           UNITED STATES ATTORNEY'S OFFICE
             By:  Joseph E. DePadilla
21                Graham Stolle
                  Assistant United States Attorney
22                Counsel for the United States

23
             ANCHOR LEGAL GROUP, PLLC
24           By:  Anthony Michael Gantous
                  Counsel for the Defendant
25
```

```
 1              (Proceedings commenced at 9:19 a.m.)
 2              THE CLERK:  In the matter of criminal case number
 3    2:21cr115, the United States of America versus Antonio Romya
 4    Beale.  The United States is represented by Joe DePadilla,
 5    and defendant is represented by Anthony Gantous.
 6              Mr. DePadilla, is the government ready to proceed?
 7              MR. DEPADILLA:  The government is ready.
 8              Good morning, Your Honor.
 9              THE COURT:  Good morning.
10              THE CLERK:  And, Mr. Gantous, is your client ready
11    to proceed?
12              MR. GANTOUS:  The defense is ready.
13              Good morning, Your Honor.
14              THE COURT:  Good morning.
15              All right.  So we're here this morning for the
16    sentencing of Antonio Romya Beale, who has entered a plea of
17    guilty to Count One, conspiracy to distribute and possess
18    with the intent to distribute 500 grams or more of
19    methamphetamine, and Count Five, possession of a firearm in
20    furtherance of a drug trafficking crime, and using and
21    carrying a firearm during and in relation to the same drug
22    trafficking crime.
23              Government, do you have any victims?  I know it's a
24    drug trafficking offense, but I also know there was some
25    crimes of violence that was relevant conduct.  Do you have
```

1   any victims that are here, or that desire to be heard, or

2   have any objections to anything?

3           MR. DEPADILLA:  No, Your Honor.  None of the

4   victims desired to be here in this case.

5           THE COURT:  Okay.  Very good.

6           All right.  So I'll have to first accept the

7   defendant's plea of guilty.  So, first, it's my

8   understanding that on October 27th, 2021, Mr. Beale appeared

9   before United States Magistrate Judge Robert Krask, and pled

10  guilty pursuant to a written plea agreement and a written

11  statement of facts to Count One, charging conspiracy to

12  distribute and possess with the intent to distribute

13  500 grams or more of methamphetamine, and to Count Five,

14  charging possession of a firearm in furtherance of and using

15  and carrying a firearm during and in relation to a drug

16  trafficking crime.  Judge Krask accepted the plea of guilty.

17          Mr. Gantous, I know you were present during the

18  plea hearing.  Is there any reason now that I should not

19  accept your client's plea of guilty?

20          MR. GANTOUS:  There is none, Your Honor.

21          THE COURT:  All right.

22          All right, Mr. Beale.  Would you stand up where you

23  are?

24          Mr. Beale, is there any reason I should not accept

25  your plea of guilty at this time?

1        THE DEFENDANT:  No, Your Honor.

2        THE COURT:  All right.  I find in the case of the

3   United States versus Antonio Beale that the defendant's plea

4   of guilty to Count One, charging conspiracy to distribute

5   and possess with the intent to distribute 500 grams or more

6   of methamphetamine, in violation of Title 21, United States

7   Code, Section 841(a)(1) and (b)(1)(A), and to Count Five,

8   charging possession of a firearm in furtherance of and using

9   and carrying a firearm during and in relation to a drug

10  trafficking crime, in violation of Title 18, United States

11  Code, Section 924(c), was knowing and voluntary and is

12  supported by an independent basis in fact containing each of

13  the essential elements of the offenses.  The plea of guilty

14  is therefore accepted as to Counts One and Five of the

15  indictment, and the defendant is adjudged guilty of the

16  same.

17        All right, Mr. Gantous.  Have you had a sufficient

18  opportunity to review the presentence report with your

19  client prior to appearing in court today?

20        MR. GANTOUS:  I have, Your Honor.

21        THE COURT:  All right.

22        Mr. Beale, did you have an opportunity to receive

23  your presentence report?

24        THE DEFENDANT:  Yes, sir.

25        THE COURT:  All right.  Did you read it and review

```
1    it?
2              THE DEFENDANT:  Yes, sir.
3              THE COURT:  Did you discuss it with your lawyer?
4              THE DEFENDANT:  Yes, sir.
5              THE COURT:  All right.  Did you have an opportunity
6    to ask your lawyer any questions you may have had about the
7    report?
8              THE DEFENDANT:  Yes, sir.
9              THE COURT:  All right.  Do you need any more time
10   to discuss anything that's in the report, or anything that
11   needs to be discussed with him before sentencing, before we
12   move forward with your sentencing hearing?
13             THE DEFENDANT:  No, Your Honor.
14             THE COURT:  Okay.  Very good.
15             All right, Mr. DePadilla.  Are there any additions,
16   corrections, or objections to the presentence report on your
17   behalf?
18             MR. DEPADILLA:  The government has none, no, Your
19   Honor.
20             THE COURT:  Okay.  All right.
21             All right, Mr. Gantous, so let's see.  I see that
22   you have a couple of objections.  One is to paragraph 17 of
23   the presentence report, which finds that there was an
24   assault that took place, and you claim that your client did
25   not assault anyone.
```

1           And then there is a second objection to paragraph

2    21, where you argue that some text messages are taken out of

3    context.

4           Do you still maintain those objections,

5    Mr. Gantous?

6           MR. GANTOUS:  We have decided to withdraw those

7    objections, Your Honor.  They do not affect the guidelines

8    in the least, and they are being withdrawn.

9           THE COURT:  Okay.  Very good.  All right.

10           I assume there is no objection to that,

11    Mr. DePadilla.

12           MR. DEPADILLA:  No objection, Your Honor.

13           THE COURT:  All right.  Those objections will be

14    withdrawn.

15           All right, Mr. Gantous.  Do you have any objections

16    to anything else that's in the presentence report as it

17    relates to the background of your client, the conditions of

18    supervised release, or anything that's contained therein?

19           MR. GANTOUS:  No, Your Honor.

20           THE COURT:  Okay.  So the probation officer has

21    determined that there is a mandatory minimum of five years

22    in this case, I believe, on the methamphetamine count.

23    However, there is a total offense level of 35, and the

24    defendant has a criminal history category of VI, which

25    yields an advisory sentencing guideline range of 262 months

1    to 365 months on the drug count.

2            Mr. DePadilla, are the guidelines correctly

3    calculated?

4            MR. DEPADILLA:  Yes, Your Honor, they are.

5            THE COURT:  All right.

6            Mr. Gantous, are the guidelines correctly

7    calculated?

8            MR. GANTOUS:  I believe so, Your Honor, yes.

9            THE COURT:  Okay.  Very good.  All right.

10           All right, Mr. DePadilla.  Do you have any evidence

11   you would like to present this morning on anything?

12           MR. DEPADILLA:  Yes, Your Honor, one brief video.

13   It's to support paragraph 18 in the indictment.

14           THE COURT:  Okay.

15           MR. DEPADILLA:  With the Court's permission, I have

16   for the file a disk that has it on it, but I already have it

17   loaded on the computer.

18           THE COURT:  Sure.  Give me one second.  I want to

19   turn to paragraph 18 in the presentence report first.  Okay.

20           MR. DEPADILLA:  Thank you, Your Honor.  And I'll

21   play it now.

22           (The video was played.)

23           THE COURT:  Hold on.  Okay.

24           MR. DEPADILLA:  I would like to move to admit the

25   video before I play it for you.

JILL H. TRAIL, Official Court Reporter

```
 1            THE COURT:  All right.

 2            Mr. Gantous.

 3            MR. GANTOUS:  I'll object for the record, Your

 4  Honor.  The cuts of the video are well-described in the PSR.

 5  They were played.  This is probably the third time being

 6  played at this point.  We don't dispute that Mr. Beale is a

 7  part of this video.  It's unnecessarily prejudicial to

 8  Mr. Beale to play the video for the Court this morning, Your

 9  Honor.

10            THE COURT:  All right.  Well, Title 18, United

11  States Code, Section 3661 indicates that no limitation shall

12  be placed on the information concerning the background,

13  character, and conduct of a person convicted before a Court,

14  and the Court may receive and consider that evidence.

15  Mr. DePadilla has made a proffer that this video supports

16  the information that's contained in paragraph 18 of the

17  Presentence Report.

18            Is that correct?

19            MR. DEPADILLA:  Yes, Your Honor.

20            THE COURT:  So on that basis the objection is

21  noted, but it will be overruled.

22            MR. GANTOUS:  Thank you, Your Honor.

23            THE COURT:  All right.  Go ahead, Mr. DePadilla.

24            MR. DEPADILLA:  Thank you, Your Honor.

25            (The video was played.)
```

1          MR. DEPADILLA:  Thank you, Your Honor.

2          THE COURT:  All right.  All right.  Thank you very

3    much.

4          All right, Mr. Gantous.  Do you have any evidence

5    you would like to present this morning?

6          MR. GANTOUS:  No, Your Honor.

7          THE COURT:  Okay.  All right.

8          All right, Government.  I'll hear argument from

9    you, and then I'll hear from Mr. Gantous.

10         MR. DEPADILLA:  Thank you, Your Honor.

11         Normally, Your Honor, in drug and gun cases where

12   the defendant pleads guilty before you, is honest with

13   probation, and does it quickly, I tend to argue for the

14   bottom of the guideline sentences is what I generally do.

15   The problem with this defendant is there is a lot more going

16   on than just drugs and guns, and it's all very bad.

17         First, there was a lot of methamphetamine in this

18   case, and there were multiple lethal weapons.  They had an

19   arsenal to protect it.  The purpose of this defendant's

20   residence was just to push as much meth onto our streets as

21   possible.  It's the only reason the location existed.  And

22   the guns were there to partially protect the revenue of

23   those drugs.

24         But what this is, Your Honor, you can see from the

25   presentence investigation, it's a gang investigation.  The

1   FBI got involved because a series of abductions, like the

2   ones you watched on the screen, were happening in real time

3   in the different cities, and at that time, that's going to

4   drum up the FBI.  They're going to start looking into it.

5          The gangs in our community, Your Honor, are very

6   smart, because they prey on one of the more vulnerable

7   groups in our community, other low-level criminals like the

8   victim you saw in the video.  He was selling meth for the

9   gang.  He did not come up with the money in a timely

10   fashion.  So you are watching the gang attempting to collect

11   that money.  And they do it at first because they can,

12   right?  They can prey on these people.  And, second, they

13   count on law enforcement not really following up, because

14   these people don't matter, right?  That's how they're

15   viewing it.

16          This defendant has admitted that he was pretty high

17   up in that gang.  He was part of that gang long before this

18   current criminal conduct.  And whether or not he got jumped

19   out, even if you take that at face value that at some time

20   while he was in the Department of Corrections he got jumped

21   out, I think the important point is he has admitted he has

22   gone right back in, right?  He does his time, and he's right

23   back in the gang.

24          Most of his adult life he's been incarcerated, and

25   it really had no effect on what he chose to do once he came

```
 1   back in society.

 2           Now, I do grant that Mr. Gantous's paper is

 3   correct.  This defendant had a horrible childhood.  No role

 4   models, no real parents.  But there are a lot of people that

 5   come from that background, you know, before this Court, and

 6   they don't go on to become gang leaders who spend their time

 7   selling drugs, abducting and robbing people, and maintaining

 8   arsenals of weapons, right?  This is a person with a bad

 9   background, but he has ended on the ultimate end of the

10   scale.

11           So I can't argue to you to give him the bottom of

12   the guidelines.  His crimes of the present and his crimes in

13   the past argue for more time than the bottom.

14           What you're looking at here is the Gangster

15   Disciples in real time, and they are a real problem.

16           And I also credit the defendant when he told

17   probation that Donte Hampton, who has chosen the name

18   Messiah in our community, is an extremely dangerous leader.

19   He's the first one in the indictment that's before Your

20   Honor, and he has visited misery on a lot of people in this

21   community.  And this presentence report that you're seeing,

22   Your Honor, is just the tip of the iceberg for what's going

23   to come out about him.

24           What's really important about that video, Your

25   Honor, and the reason I played it for you, is because of
```

1    where the FBI found it.  It was on Donte Hampton's phone,

2    which means he's sending out people in the community,

3    including this defendant, who is a leader, and he's also

4    demanding that there is video evidence that these acts are

5    carried out.  I think that's particularly heinous as well.

6         But enough about Hampton.  This defendant owns his

7    own share, right?  He is a burden to society, and he owns a

8    debt to the broken people he has left behind in the wake of

9    his becoming Messiah's lieutenant when he got out.

10        Looking at one of the most important factors, I

11   think, Your Honor, is general deterrence.  The Gangster

12   Disciples need to be deterred at this point, right?  They

13   know the FBI is going after them.  They know now that the

14   federal courts are involved, and people are going to be

15   punished.  And if there isn't a harsh enough sentence, then

16   the abductions are going to continue, the meth is going to

17   flow, and then more people are going to get hurt.

18        So respectfully, Your Honor, I would ask that you

19   don't sentence him at the bottom, that Your Honor use your

20   experience and judgment in this case and sentence him

21   somewhere within this guideline that's appropriate based off

22   of all of his conduct.

23        THE COURT:  Thank you very much.

24        MR. DEPADILLA:  Thank you, Your Honor.

25        THE COURT:  All right, Mr. Gantous.

```
 1              MR. GANTOUS:  Thank you, Your Honor.

 2         Your Honor, there is a reason that Mr. DePadilla

 3    focused on Donte Hampton, Mr. Beale's co-defendant.  It's

 4    because he's the true bad actor here.  Mr. Beale is

 5    responsible for his actions in this matter, but he was

 6    enticed into those actions by Mr. Hampton to a significant

 7    degree, Your Honor.

 8         Starting with Mr. Beale's young childhood, as is

 9    detailed in the presentence report, it was a rough

10    childhood, Your Honor.  His father wasn't a part of his

11    life.  His mother was emotionally and physically abusive.

12    He was involved -- he was involved in the adolescent

13    juvenile detention system early on.

14         He got in trouble in the '90s, and a string of

15    robberies led to 20-plus years in prison, Your Honor.  He

16    was jumped out in prison.

17         Mr. Beale is a story of someone who constantly is

18    trying to do the right thing.  He knows what the right thing

19    is, but he's made a few bad decisions along the way, Your

20    Honor, including his actions leading to the string of armed

21    robberies in the '90s.  He did his time for that.  And,

22    importantly, while he was in prison for that state crime

23    string of robberies, he became active in his Muslim faith.

24    He was a leader in the prison.  He earned his GED, and he

25    learned some skills, Your Honor.  So, he has marketable
```

1    skills.  He has positives that he can use when he's released

2    from federal prison.

3            So when he gets out of state prison, he works for a

4    while.  He comes into some money that's left through an

5    inheritance, and he works for a while, Your Honor.  He

6    starts his own company.  He has different odd jobs.

7    Unfortunately, he gets involved with Mr. Hampton, and gets

8    back into his old life; that's on him.  He's accepted

9    responsibility for it, Judge.  But those other good factors

10   should not be ignored by the Court.  They should not be

11   disregarded by the Court.  They are considerable factors

12   that bear on how Mr. Beale is going to be once released from

13   federal prison.

14           And the purpose of 3553(a) is to enforce a sentence

15   sufficient, but not greater than necessary, Your Honor.  The

16   guideline range, even the low end is more than sufficient to

17   satisfy the ends of justice and what the Court is trying to

18   do here, Your Honor.  Twenty-plus years is more than enough

19   time for a 46-year old man to be further rehabilitated, to

20   further realize the error of his ways, and it does send a

21   message to other members that are involved in this

22   conspiracy that the Court is serious, and that if you mess

23   around in this district, you're going away for a long time,

24   and that's the low end.  The low end is beyond sufficient

25   and not greater than necessary.

1          Also, Your Honor, Mr. Beale, from the character
2    letters that we submitted -- I am sure the Court has read
3    them -- he's more of a dynamic person than guns and drugs.
4    He's helped many women who were in the prostitution arena
5    get out of that trade.  He's helped a lot of people escape
6    death.  He's helped.  He's helped people.  Mr. Beale
7    actually does help a lot of people.
8          The video that was played for you, a bad act, Your
9    Honor, can't deny it, but that's not the entirety of who he
10   is as a person.
11         He does help people.  He has got his GED.  He's
12   started businesses.  He's made money legally.  He's helped
13   quite a few.
14         He's recently married, Your Honor.  His new wife is
15   in the courtroom, Ms. Brittany Beale, sitting in the back
16   there.  He does have family.  He does have friends.  He is
17   loved by many, Your Honor.  Therefore, the sentence at the
18   low end of the guideline range is sufficient, but not
19   greater than necessary, to achieve the ends of justice in
20   this case, and sends a message to the community that the
21   Court is serious about deterring crimes such as Mr. Beale's.
22         THE COURT:  All right.  All right.  You may remain
23   at the podium, Mr. Gantous, and I'll ask your client to come
24   forward.
25         MR. GANTOUS:  And he does have a brief unsworn

1    statement for the Court.

2         THE COURT:  Sure.

3         All right, Mr. Beale.  You don't have to, but is

4    there anything you would like to say before I pronounce

5    sentence?

6         THE DEFENDANT:  Yes.  I wrote a letter that I

7    wanted to address to the Court, namely to you, and it reads

8    as:

9         Dear Honorable Judge Young, I stand before you this

10   day in all humility, having prayed to Allah that this Court

11   gives ear and understands as well as consider my remorse,

12   the depths of my regrets, my pains, and the sorrow I feel in

13   having let down myself, my family, my peers, my loved ones,

14   as well as those that depend on me.

15        I stand before you in acceptance of full

16   responsibility of my actions.  Your Honor, it's like

17   deja vu, because over 30 years ago I was a 17-year old

18   adolescent in trouble with the law, and pled guilty and

19   receiving over 40 years, and ultimately did a life sentence

20   erroneously, as I was misclassified by the DOC, and ended up

21   doing more time than what the Judge intended for me to do.

22   I mention this in hopes that the Court will take this into

23   consideration in delivering my sentence, that my criminal

24   history is in fact over 30 years ago, where pursuant to the

25   book of variance, it's called that such criminal history and

sentence should be mitigated by the impetuousness and
recklessness of youth.

Today I beseech the Court to please reflect on my
acceptance of responsibility, as explained in my PSI, which
is on page 9, paragraph 22, and take into consideration the
special characteristics of all of my actions, not just the
bad actions, which the prosecutor has, um, very well so put
and described me at my worst, but take into consideration my
actions that are more focused on the good that is in me.

Mr. Honorable Judge Young, I was told that you are
a fair judge, a wise judge, and also a strict judge, and so
I ask you by way of --

What is it, 3535?

MR. GANTOUS:  3553.

THE DEFENDANT:  -- 3553, that my attorney had
mentioned, that the Sentencing Reform Act, that the
retribution of my punishment be truly just, and that my
sentence truly give me the rehabilitation in the most
effective manner.

Your Honor, it was the same peer pressures and
coercions that influenced my behavior when I was 17 years
old, only to find me three decades later leaving me under
duress, and this is the rehabilitation that I am need of,
and the rehabilitation that I need from.

I was released from prison in 2018, and against all

1    odds, having been incarcerated for 26 years, I gained

2    meaningful employment my first week out, Your Honor.  I was

3    left over $60,000 by way of a beneficiary, and despite

4    having money and being financially stable, I still worked

5    two to three jobs.  I was active in the community functions,

6    being an active member in the community, attending PTA

7    meetings.  I helped coach special needs aerobics.  I

8    maintained weekly religious meetings, teaching Islamic

9    classes in the local Masjid Ash-Shura in Norfolk, Virginia.

10    I supported several fundraisers designed to help communities

11    feed the hungry and help the homeless.

12          I was given the opportunity to go to Richmond,

13    where I met with Ms. Wendy Brown, getting her cleric's

14    approval for the paid position as an Imam for the Muslim

15    Chaplain Services of Virginia while volunteering as a

16    religious and spiritual leader to help and assist and offer

17    guidance to incarcerated Muslims.

18          I volunteered at the request of Wendy Brown, and

19    asked her if I could ever go into the DOC, where I went into

20    St. Brides and other institutions as Indian Creek, as a

21    guest speaker to encourage and beget other returning

22    citizens with job opportunities, transportation means, and

23    other support which helps inmates transition successfully

24    back into society.

25          In communities, I've offered gang members a way out

1    from their life of crime by offering them legit jobs,

2    housing assistance, and means to escape drugs, and all the

3    while looking for my own escape from the temptation and evil

4    and life of crime that came knocking on my front door.

5          I maintained employment with several health

6    companies, working as a direct support professional, where I

7    rendered support to those with mental disabilities such as

8    Asperger's Syndrome, autism, and the like, and proved to be

9    an asset for all of my clients' progress.  I even obtained

10   DBIDS, and accessed the Fort Eustis military base despite my

11   background.  I gained employment as a healthcare aid.

12         And, again, in reading the book, this shows my

13   exceptional drive for rehabilitation efforts on my part.

14   And all of this, I did not agree or set out to become

15   involved with selling drugs or to be entangled in any drug

16   conspiracy, and in truth and under oath, it came looking for

17   me.

18         THE COURT:  I am going to ask you to slow down just

19   a little bit, so she can keep up and type, okay?

20         THE DEFENDANT:  Okay.

21         THE COURT:  But go ahead.

22         THE DEFENDANT:  In short and in closing, Your

23   Honor, I am a family man, recently married to my wife.  We

24   lost our unborn child due to the stress and hardships of the

25   prosecution and this incarceration.  My mother-in-law is

1    terminally ill.  Without being home, she has no caretaker.

2    Things have become financially and physically burdensome for

3    my family, and I accept this being apart and results

4    stemming from my own misconduct and falterance(SIC) in my

5    own right decision making, but I am here today at the mercy

6    of the Court asking and beseeching for leniency on my

7    sentence, and help for my current and future rehabilitation.

8            Thank you, Your Honor.

9            THE COURT:  All right.  So thank you very much,

10   Mr. Beale.

11           All right.  So I've reviewed the presentence report

12   in this case and the attached sentencing guidelines, which

13   are advisory.  I've also considered the government's

14   position on sentencing, the defendant's position on

15   sentencing.  I've considered the evidence that's been

16   proffered this morning by way of a video that's been played

17   by the government.  I've considered the defendant's

18   evidence, which are the letters of support that I reviewed

19   before I took the bench.  I have considered the argument of

20   counsel, and I've considered Mr. Beale's allocution.

21           I've also reviewed the sentencing factors outlined

22   in Title 18, United States Code, Section 3553(a), and I've

23   considered all of those factors.

24           Specifically, I've considered the nature,

25   circumstances, and seriousness of this offense.  The

presentence report reflects that Mr. Beale conspired with
Mandi Green, Donte Hampton, and others to distribute and
possess with the intent to distribute 500 grams or more of
methamphetamine and less than 50 kilograms of marijuana,
which is a significant amount of controlled substances.  As
part of the conspiracy the defendant possessed four firearms
in furtherance of the drug trafficking enterprise.

Additionally, as pointed out in the conduct, by way
of relevant conduct, during the conspiracy Mr. Beale
participated in the abduction of an individual who was zip
tied, driven to another location, pistol whipped by
Mr. Beale, held at gunpoint by another co-conspirator, and
then was sodomized with a broom.

The PSR also reflects that on June 9th, 2021, that
Mr. Beale and another co-conspirator in an effort to settle
a drug debt made victims, made at least two victims remove
their clothing, get on their knees, and then Mr. Beale began
to pistol whip one of the victims, which caused the gun that
he was pistol whipping the victim with to discharge.  As
Mr. Beale was pistol whipping one of the victims, a
co-conspirator began kicking and stomping the other naked
victim.

Also by way of relevant conduct that's pointed out
in the presentence report that on April 21st, 2021, there
are text messages which the government attributes to the

1  defendant, wherein it is alleged that Mr. Beale threatens to

2  kill an individual named Angel if Angel does not pay

3  Mr. Beale a drug debt within 48 hours.

4        The Court has also considered the history and

5  characteristics of Mr. Beale.  Mr. Beale did have a rough

6  and challenging childhood.  His father was incarcerated

7  during most of Mr. Beale's childhood.  He reports that his

8  mother was addicted to controlled substances, and that he

9  suffered physical and mental abuse during his childhood at

10  the hands of his mother.  During his teenage years,

11  Mr. Beale was homeless and slept in cars and in abandoned

12  buildings.

13        The defendant's first conviction occurred when he

14  was 14 years old.  His adult convictions include robbery,

15  grand larceny auto, and possession of a sawed-off shotgun.

16  Mr. Beale also committed the instant offense while serving a

17  period of state probation.

18        Finally, there is evidence in the presentence

19  report and by way of the video that Mr. Beale has been

20  involved with the Gangster Disciples, and has held a

21  leadership position within that organization.

22        The Court also considers the need for the sentence

23  imposed to promote respect for the law, to provide just

24  punishment for the offenses, the need to afford adequate

25  deterrence to criminal conduct, the need to protect the

1    public from the further crimes of the defendant, the need to

2    provide the defendant with educational and vocational

3    training, medical care, and other correctional treatment.

4          The Court has considered the advisory sentencing

5    guideline range.  I've also considered the kinds of

6    sentences available, the need to avoid unwarranted

7    disparities in sentencings.  I have considered any pertinent

8    policy statements, and the need for restitution for any

9    victims, and there has not been a request for restitution.

10          Therefore, it is the judgment of the Court that the

11   defendant, Antonio Beale, is hereby committed to the custody

12   of the United States Bureau of Prisons to be imprisoned for

13   a term of 300 months on Count One and for a term of

14   60 months consecutive on Count Five, for a total term of

15   imprisonment of 360 months.  The Court finds that this

16   sentence is sufficient, but not greater than necessary,

17   pursuant to the factors enumerated in Title 18, United

18   States Code, Section 3553(a).

19          The defendant shall be given credit for any time

20   served, pursuant to Title 18, United States Code, Section

21   3585.

22          Mr. Beale, upon your release from incarceration,

23   you shall be placed on supervised release for a term of five

24   years on Count One, and five years on Count Five to be

25   served concurrently, for a total term of supervised release

1    of five years.

2            Within 72 hours of your release from the custody of

3    the Bureau of Prisons, you shall report to the U.S.

4    Probation Office in the district in which you have been

5    released.

6            While on supervised release, you shall comply with

7    all of the mandatory terms of supervised release as outlined

8    in Title 18, United States Code, Section 3583(d), and which

9    are listed in your presentence report.  Namely, you shall

10   not commit another federal, state, or local crime.  You

11   shall not unlawfully possess a controlled substance.  You

12   shall refrain from any unlawful use of a controlled

13   substance, and shall submit to one drug test within 15 days

14   of release on supervision and at least two periodic drug

15   tests thereafter, as determined by the Court.  You shall not

16   possess a firearm, ammunition, destructive device, or any

17   other dangerous weapon.

18           While on supervised release, you shall also comply

19   with all of the standard conditions of supervised release

20   that have been adopted by this Court and are outlined in the

21   presentence report.

22           While on supervised release, you shall also comply

23   with the following special additional conditions.  You shall

24   obtain a college degree or vocational skill during your

25   period of supervision, if not employed full-time.  You shall

1    have no contact with any gang member without first obtaining

2    permission from the probation officer.

3            The Court has considered your negative net worth

4    and lack of liquid assets, your lifestyle and financial

5    needs as reflected in the presentence report.  I've also

6    considered your earning potential and the lack of dependents

7    relying on you for support.  The Court finds that you are

8    not capable of paying a fine, but you are capable of paying

9    a special assessment of $100 per count of conviction for a

10   total of $200.  No fine or restitution is imposed in this

11   case.

12           Payment of the criminal monetary penalties shall be

13   as follows.  The criminal monetary penalties shall be due in

14   full immediately.  Any balance remaining unpaid on the

15   special assessment at the inception of supervision shall be

16   paid by the defendant in installments of not less than $25

17   per month until paid in full.  Said payments shall commence

18   60 days after the defendant's supervision begins.  Payment

19   of criminal monetary penalties shall be due during the

20   period of imprisonment.  All criminal monetary penalty

21   payments are to be made to the Clerk, United States District

22   Court, except those payments made through the Bureau of

23   Prisons' Inmate Financial Responsibility Program.

24           You shall notify the United States Attorney's

25   Office for this district within 30 days of any change of

1    name, residence, or mailing address until all fines,

2    restitution, costs, and special assessments imposed by this

3    judgment are paid in full.

4          With respect to recommendations, the Court

5    recommends that you receive educational and vocational

6    training while incarcerated.  The presentence report

7    indicates that you do not have a drug problem or any mental

8    health issues.  However, the Court recommends that you

9    receive an evaluation for the need for substance abuse

10   treatment.  And given the difficulty that you had throughout

11   your childhood, the Court recommends an evaluation for

12   mental health treatment while incarcerated.  The Court also

13   recommends that you be housed as close to your family as

14   possible, although ultimately it's up to the Bureau of

15   Prisons to decide where you will ultimately be housed.

16         Mr. Beale, you pled guilty pursuant to a plea

17   agreement, and you waived almost every right of appeal in

18   that plea agreement, and by me saying the following, I am

19   not suggesting that there is a reason for appeal or a right

20   to appeal, but if for any reason you desire to file an

21   appeal, you must file a written notice of appeal within

22   14 days of today's date.  If you don't file such a notice in

23   that way and in that time, the Court of Appeals may presume

24   that you have waived your right to appeal.

25         Do you understand that?

```
 1              THE DEFENDANT:  Yes, sir.

 2              THE COURT:  Okay.

 3              Mr. Gantous, your representation of Mr. Beale shall

 4     extend through the filing of a notice of appeal, should

 5     there be a request for the same.

 6              All right.  You all may return to your seat.

 7              Mr. DePadilla, is there anything else we need to

 8     address by way of other counts or other indictments?

 9              MR. DEPADILLA:  Pursuant to the plea agreement,

10     Your Honor, the government moves to dismiss all remaining

11     counts.

12              THE COURT:  All right.  That motion will be

13     granted.

14              MR. DEPADILLA:  Thank you, Your Honor.

15              THE COURT:  All right.

16              So, I'll ask you all to remain standing.

17              So, Mr. Beale, I will tell you when I read the

18     information in the presentence report, some of which I

19     detailed, some of which I have not, I believe based on all

20     of that, and based on the video that I saw that you deserved

21     the high end of the guidelines, but I did not give you the

22     high end of the guidelines, because you seem to have

23     accepted responsibility for your actions, and you did so

24     quickly, so I balanced that against the horrible nature of

25     what I read in that presentence report, and that's why I did
```

1    not sentence you to the high end of the guidelines, but your

2    conduct does deserve a significant sentence, and that's why

3    you have been given a significant sentence.

4              So, Mr. Beale, I do wish you well in the service of

5    your sentence.  I hope that you will turn your life and head

6    in a different direction, and I hope that you will no longer

7    be involved with the Gangster Disciples or any other

8    organized crime entity, and that once you are released you

9    will lead a productive life.

10             The parties have submitted a Consent Order of

11   Forfeiture, which I will enter at this time.

12             All right, Mr. DePadilla.  Is there anything else

13   we need to address in this case?

14             MR. DEPADILLA:  Not at this time, Your Honor, thank

15   you.

16             THE COURT:  All right.

17             Mr. Gantous, anything else from your perspective

18   that we need to address?

19             MR. GANTOUS:  Nothing here, Your Honor.  Thank you.

20             THE COURT:  All right.  Very good.

21             All right.  Mr. Beale is in your custody, Marshals.

22             Ms. Jones, I'll take a brief recess between now and

23   the next case.

24             THE CLERK:  All right, Your Honor.

25             (Proceedings concluded at 9:57 a.m.)

1                          CERTIFICATION

2

3        I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6

7               _____/s/_____

8                          Jill H. Trail

9                        January 25, 2023

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25